Our fourth case is 20-12-19 Unrein v. PHC-Fort Morgan. Mr. Garth. Good morning, your honor. Your honors, may it please the court. My name is Zach Garth. I'm counsel for the appellant Mrs. Joan Unrein. I'd like to reserve five minutes for rebuttal. Your honors, today I would like to only make one point and that is that if you give a blind woman a cane to help her cross the street, you cannot yank that cane away and then yell at her to run faster. Or, to use the language of the Seventh Circuit, that under the ADA and absent some change in circumstances, an employer may not rescind an accommodation simply because it is inconvenient or burdensome. That is exactly what happened to Mrs. Unrein. It was unlawful and the district court's ruling is a violation of the public policy of the statute as well as basic morality. How do you say that when the doctor says that she couldn't do her job anymore and that she also got long-term disability? I don't know how you liken that to jerking her cane away. Thank you for that question, Judge Phillips. The application for FMLA leave and the medical supervision that Mrs. Unrein received for that was for medical conditions unrelated to her blindness and unrelated to the accommodation that is the subject of the ADA here. He opined that she could not enter data on the computer or read. Isn't that right? Your honor, I would have to look into that more closely, but my understanding is that Mrs. Unrein was provided the necessary medical adaptive equipment such that she was able to enter computer information into the screen during her job performance. Well, she was given that equipment at a cost of about $2,000, I think, but then it's later on that the doctor opined she can't do that anymore is my understanding of the record, but correct me if I'm wrong. The purpose for seeking FMLA leave was, as I stated, was for medical reasons unrelated to the blindness. Those other medical reasons may also have connected to the use of the computers. With your honor's permission, I will take a look at the record and respond to that on rebuttal if that is acceptable. But the key legal question here for the court is whether or not an employer may rescind an accommodation without some change in circumstances or justification. Here, Mrs. Unrein was provided with an accommodation that was reasonable. She was allowed some flexibility because she was relying on rides to get to work to come in a little bit late or to leave a little bit early, but generally worked the same four days per week on a consistent basis and had a shared calendar with her supervisor. During that accommodation, counsel? I think the defendant, the employer, says that she wasn't given an accommodation. It was more tolerance, and I'm curious how we draw that line. Say you have an employee who can't do the job anymore, but it's hard to get somebody as a replacement, so you keep that person on and just tolerate the fact that the person isn't doing a good job. At some point, it gets intolerable, or you can find somebody to help out. How do you where the employer says, okay, as accommodated, you're performing all the essential functions of the job? I think that's an excellent question, because if that were the situation here, if it were in fact that Mrs. Unrein was not competently doing the job and that the hospital was just trying to hold things together, then that would be a different situation. They would be fully within their rights to then discharge the employee if they're not meeting their standards. During the accommodation that was provided, she was consistently rated as competent, and which was defined as clearly meeting all of the requirements of the position in both quality and quantity. I think that the distinction being made by the medical center lacks some genuineness. It's as if you're trying to say that we're going to try out as a temporary solution for 15 months this accommodation. If the medical center or if an employer wants to provide a temporary accommodation, the case law is very clear that temporary accommodations need to be communicated to that employee so that the employee knows their circumstance and what they're in. To allow employers to secretly hide their intentions and determine at their own whim when they are ready whether or not accommodation may be allowed or not is contrary to the clarity sought by the purpose of the ADA. The ADA's purpose is to establish a clear and comprehensive national mandate against discrimination and to allow employers to hold all the cards and keep that secret, employees would have no knowledge of whether or not they are protected against that discrimination. It would be difficult for courts and for employers to determine when and whether they are obligated to provide those accommodations. Here, the district court found two things. One is some physical presence by Ms. Unright, and I think during the 15-month period, I think she was providing some physical presence at the hospital. The other part of that was a set and predictable schedule. At least over time, that was not being met. The essential function here is some physical presence and predictability. What's the legal error or the clear factual error in the district court's conclusion on that score? With respect, Your Honor, I think that the paraphrase that you provided for the conclusion of the essential feature is not quite on point with what the her daily work schedule as being required. Some physical presence was a daily physical presence. The district court parsed the number of hours. The medical center wanted it to be closer to upwards of six. The district court ultimately found it was closer to four hours per day that were required to be present, but that she was also required to be involved in daily roundings and daily meetings with different departments. When the district court ruled that her schedule was the essential function, the district court says that that physical presence, daily physical presence, was the essential function that was not being covered. As I said, Ms. Unright had a shared calendar with her supervisor, generally worked the same four days each week. There was just flexibility based on her rides and when she would come and when she would leave. Now, there is no evidence in the underlying record of an undue hardship or of a change in circumstances to justify rescinding that accommodation. Her job description never changed, nor did the hospital change its business. They just decided that they were going to change that accommodation. Now, the reason given by the medical center on that point was that there was a decrease in the food quality scores for the patient satisfaction, but there's no connection between the flexible schedule of the dietician and the food quality. During the 15 months of the accommodation, the accommodation remained constant, but the food quality scores fluctuated. So, there's no correlation between those two variables, nor is food quality in the job description for the clinical dietician. In fact, the food quality was the responsibility of the chef, the very person who was Mrs. Unright's supervisor, who yanked the cane away from her and who testified at trial that he was frustrated by having to accommodate for the rides. He was frustrated that Ms. Unright was dependent on other people for rides to and from work. That is, he was frustrated by the inconvenience of the flexibility in her schedule. That's precisely the thing that the ADA prohibits as a justification for removing an already granted accommodation, at least under the law of the Seventh Circuit. It's kind of an interesting situation here because the accommodation or the problem for the disabled person is totally beyond the control of the employer. As your opponent frames it, it's a transportation barrier rather than something that the employer creates at the workplace or by the schedule. I'm not sure whether we can completely ignore that. There are many employees that will have personal circumstances that would preclude them from getting to work on time, in this case, because she couldn't drive and lived a long way away. The employer has nothing to do with the distance where she lives or the methods of transportation. You can imagine a wheelchair-bound employee that can't afford a van or something and isn't able to get to work regularly because of the inability to find volunteers. What do we do in a case like that? In theory, she could have cured the problem by living closer to the hospital. What do we do? I would like to address that question now. I see we're in the time that I had reserved for rebuttal. Your Honor, I'd like to address that question that you've posed. First, I'd like to address it both procedurally as well as substantively. Procedurally, I don't believe that the appellee has properly presented that issue for this court for consideration. To the extent that this court would like to rest its decision on that analysis, I would respectfully request the opportunity to provide a briefing on the issue. Substantively, there is a good reason, I believe, why courts in the Tenth Circuit have not accepted the blanket rule that transportation to allow for case-by-case accommodations. It is a reasonable accommodation that is required without undue hardship and that promotes the interaction between the parties to find that solution. To establish blanket rules would undermine the opportunity there for case-by-case resolution. In fact, in this case, it would cause a problem here because for 15 months, the parties had agreed that this was a reasonable accommodation and it was appropriate. It's not like we're asking for Medical Center to send its CEO to go pick up Mrs. Unrein every single day on their commute to work or to build a bridge over a washed-out road. This was a reasonable accommodation that was provided without undue hardship to Medical Center. Now, with that, Your Honors, I'd like to reserve the remaining three minutes I see that I have for rebuttal. Thank you, Counsel. Let's hear from Mr. Peters. Thank you, Your Honors. May it please the Court. In 2008, this Court decided the case of Hornick v. Boyce at 280 Fed Appendix 770, which was an appeal of findings of fact and conclusions of law entered by District Judge Blackburn. And in affirming that decision, this Court found that findings of fact and conclusions of law and commended him for his, quote, conscientious and excellent work. Today, the Court again faces an appeal of thorough and detailed findings and conclusions by Judge Blackburn after a three-day trial with seven witnesses and more than 100 the issues on appeal, which are, one, whether regular, scheduled, predictable, and primarily physical presence was an essential function of Ms. Unrein's job, and two, whether Ms. Unrein's requested and later withdrawn accommodation of being physically present whenever she could get a ride to work on whatever day she could get a ride to work and for however long her ride could stay and transport her depends absolutely on the facts. And as a result, Your Honors, the clear error standard of review applies. The first issue that we have to deal with and the first issue that the District Court dealt with, of course, was is Ms. Unrein a qualified individual with a disability? And that has two prongs to it. The first is could she perform the essential functions of her job? And second, did she request a plausibly reasonable accommodation that would allow her to perform the job? And respectfully, the District Court correctly determined the answer to both of those questions is no. On the first point, what's an essential job function? Judge Phillips asked at the beginning of opposing counsel's argument, did a physician determine that Ms. Unrein was restricted from writing and computer work? The answer to that is yes, it's Exhibit Number 9 at page 4, excuse me, Exhibit 89 at page 4. And Ms. Unrein acknowledged that writing and computer work are essential functions of her job. And she admits that she could not comply with those restrictions and perform her job. That's at Volume 2, page 226 through 227, page 229 through 230, Exhibit 32 and Exhibit 34. And Ms. Unrein admits that those effectively the analysis, but there is so much more in the record as determined by Judge Blackburn. Because Judge Blackburn determined that being physically present at the hospital for at least four hours per workday and having a set and predictable schedule to ensure quality patient care were essential job functions. The record is replete with documentary support for that. Ms. Brinkman, Mr. Fisher, Ms. Owen all testified to that. And Ms. Unrein admitted it. As I understand Ms. Unrein's points on appeal, she says that a regular predictable set schedule was not actually an essential job function because one, she thinks she performed her job successfully between January of 2015 and April of 2016. And then she says a full-time schedule is just not required at all. And respectfully, she's wrong on both. Her first point, her work performance was not successful. First, she tries to exclude what happened in November and December of 2014, which was when she had a driver-dependent schedule. The district court relied upon the testimony of Mr. Fisher and others that Ms. Unrein consistently had scheduling issues and poor communication. He documented that in the 2015 performance evaluation, and he documented it in the 2016 performance evaluation. We know, of course, that Amy Laughley was working as a part-time clinical dietitian for approximately six months in 2015, and she helped Ms. Unrein do her job. We have in the record the incomplete menu projects in 2015. We have in the record, upon which Judge Blackburn relied, the April 15, 2016 meeting, where Fisher told Ms. Unrein she wasn't rounding, she wasn't doing her weekly meal equivalency reports, and there were decreased patient satisfaction scores. And then we have the 2016 evaluation, which, of course, evaluated her for the prior 12 months, where she was rated as barely competent. On all of these facts, Judge Blackburn found that the witnesses for the hospital were simply more credible than Ms. Unrein, who remarkably believed she was performing successfully. She simply was not. The second part of the essential function analysis that the court went through, and which Ms. Unrein takes issue with on appeal, is she says on appeal that full-time work wasn't required. Her argument respectfully ignores six key facts, the first of which is when Ms. Unrein was asked at trial by her lawyer what would be the appropriate number of clinical dieticians at the hospital, her response was, one, full-time clinical dietician. That's at volume two, page 60. Ms. Unrein admitted at trial the exact opposite of what she's arguing on appeal. But candidly, the issue is not whether full-time is an essential job function. The issue is whether, as Judge Temkevich pointed out, whether regular and predictable attendance with the majority, not all of it, is an essential job function. We know from the record that Mr. Fisher supplemented the clinical dietician duties during this time period of tolerance and trial and experiment. We know that Ms. Loffley was there for half a year, and that helped. We know that the hospital tried to replace Ms. Unrein with a full-time worker, but because it's located in Fort Morgan, it had a difficult time recruiting someone, so it did the best it could by hiring a locum's tenants at twice the price, and it couldn't afford to pay more than that. Ms. Unrein argues on appeal that, well, she was just meeting the bare minimums, so that should be enough. And respectfully, meeting the bare minimums in the healthcare setting should never be the standard. And last but not least on this point, Ms. Unrein's indicators. So respectfully, the district court's factual determination that the essential functions of Ms. Unrein's job included regular and predictable physical presence at the hospital for at least four hours today was not clear air. So judges, we go to the second part of the analysis. That's the reasonably plausible accommodation part. Before you move on, why is physical interaction necessary for this particular position at all? I mean, we're sitting here 12 months into Zoom world, et cetera, and many positions that we thought needed physical interaction really do not. Is there anything about this job that couldn't successfully be done by a Zoom call? There probably are some that could have judged, but not all of them. And let me tell you why. The record is replete with evidence on why physical presence was required for at least part of the day. Part of the job of a clinical dietitian is, for example, to assess the swallowing reflex of a patient. You can't do that via Zoom call. Part of the job of a clinical dietitian was to round and go talk to patients about their diet and why their diet was changing. Now, presumably you might be able to do that via a Zoom call if you didn't have to worry about infection control issues, if you didn't have to worry about having someone walk alongside of a Zoom camera or a computer or however else you would communicate. So we have all of these things in the record, Judge, where she needed to be physically present in the hospital on a regular basis. Let me ask one more question before you get to the second part. Yes, sir. What was her ultimate rating? When you say bare minimum isn't good enough, I assumed, I would assume that when they say bare minimum, it was bare minimum to be acceptable. Because they didn't get rid of her. So what were the ratings? The point that her attorney is emphasizing is they never told her her work was inadequate. They gave the ratings indicated that it was still adequate. Maybe she could have done better. Maybe they would have liked somebody who did it better. But you can't get rid of her if she's still doing an adequate job. In 2016, her performance evaluation overall rating was a 2.1. Two is the lowest in terms of meeting competency. There is a three and a four and a five. So if she was 0.1 lower, she would have been in the not meeting. What you see in the 2016 evaluation is the 2.1 is a total score. With respect to her ability to provide in-service in-person care, she scored at a one. She was actually below competent in a number of areas in the 2016 evaluation. Mr. Fisher testified that he consistently spoke with Ms. Unrein in 2015 and 2016 about her deficiencies, including, for example, the fact that she was not completing the weekly meal equivalency reports that were required and she had not done that since January of 2016. Judges, Ms. Unrein's proposed accommodation really is, let me be at work whenever I can get a ride, for however long I can get a ride, and for however long my ride will allow me to be at work. It's not, respectfully, it's not a flexible partial work schedule. It is a driver-dependent schedule that could change at a moment's notice. And of course, as the court well knows, eliminating an essential function of a job is not a reasonable accommodation. Likewise, having an irregular work schedule, particularly in the healthcare setting, is not a reasonable accommodation. She makes two responses to that. One is the, I was successfully performing my job, and that fails for the same reason it fails under the essential job function analysis. The second is this temporary issue. And as Judge Hartz discussed it and probably more accurately characterized it, it's really a tolerance issue. We tried it. We tried it, and it didn't work. And the judge, Judge Blackburn's conclusions in that regard were not clearly in error. There are volume two at 97-98, volume three at 59-60, volume four at 102-103, where the concept of a trial is discussed. Mr. Fisher said, I can be fluid to a point, but it can't impact patient care. The cases that Ms. Unrine's counsel rely upon, we point out in our brief, are in opposite. They are and we've not found any support for them in any court of appeals. We cite the better cases. Let me just ask you, since you're running out of time, and this is an important point to me, maybe not to you, is that you mentioned the doctor's statement at the end of August 2016. In December, the doctor says that she can't work in any capacity until further notice. And in January, she goes on long-term disability. Yes. And going on long-term disability, was there some sort of a concession or admission that she could not perform the job that she had? Judges, Judge Phillips, there is, of course, and I think what you're referencing there is the Cleveland versus policy management type issue. There is testimony in the record. It's findings of fact 96 and 97 that deal with that issue. What she admitted in her, excuse me, what she admitted at trial was that she, in her application, she said she was completely and totally disabled. That is in the record. That is in her testimony. It's on cross-examination. Judges, I see that my time is up. May I address one final issue? And it is the issue... Before you do that, did you have a follow-up, Judge Phillips? No, thank you very much. A final point because you're out of time. Yes, thank you, Your Honor. The opposing counsel says that we don't have the right to have the court affirm on different grounds than the lower court did below. And the Tenth Circuit case, New Mexico Farm and Livestock Bureau versus United States Department of the Interior, it's 952 F. 3rd, 1216, says just the opposite. As the winning party below, we're not required to appeal. And there are multiple grounds that this court can affirm if it finds that District Judge Blackburn committed clear error. Thank you. Counsel, Mr. Garth, you had some rebuttal? Yes, Your Honors. Thank you. I'd like to take this in three segments in response. First, to address Judge Phillips' question earlier as to the restrictions on the computers. This is actually a flaw in much of the medical center's arguments, which is that they are fluid with the timeline. When you look down into the facts, when you look down and you start analyzing the timeline and what happened and when in the trial, you see a very different picture. Mrs. Unrein's restrictions on computer work, as Judge correctly noted, happened in August 2016. That was three or four months after the accommodation had been unlawfully rescinded. And then her restrictions on work again happened later. To the extent that this issue impacts the underlying substance of this case, it could be taken up on the damages matter on remand. Secondly, I'd like to address medical center's arguments as to what is essential or essential function. As I stated, Mrs. Unrein's admission that she couldn't do computer work was tied to a timeline after the unlawful rescission of her accommodation. The bucket of nitpicks that the medical center has identified as violating her or not being successful in her performance is belied by the fact that she had a competent job rating one, but also is not the level of standard for an undue hardship or for a change in circumstances under the ADA to justify rescinding the accommodation. All employees will be imperfect. All employers will be able to find nitpicks and no accommodation will be safe if a bucket of nitpicks can rescind an accommodation as undue burden. I'd also like to address the various critiques of Mrs. Unrein in terms of her full-time schedule and when she was there and when she was available. As I said, Mrs. Unrein, when you look at the actual calendar, it matters. Mrs. Unrein does not have a single documented formal complaint about a patient missing care based off of her attendance or her performance during the time that she was granted her flexible work-from-home accommodation. From January 2015 until April 2016, there's not a single shred of evidence that a patient was impacted in their patient care during that time. And if we're going to nitpick to decimal points as to the job performance, opposing counsel is incorrect to say that Mrs. Unrein's job performance was rated at a one for specific categories. It was a 1.8. And there is a reason why... Is it your position that her position could be performed successfully 100% remotely? No, no, your honor. And that is not an issue that we have taken up on appeal. It would require some level of in-person presence. And lastly, I believe it's inappropriate to consider that whether or not this was a trial or a tolerance question, because like I said, during that timeline, no patients were impacted. Thank you very much, your honors. I see that my time... Counsel, we appreciate your arguments. Your excuse in the case will be submitted.